# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### OFFICE OF THE CLERK
1101 THOMAS P. O'NEILL, JR., FEDERAL BUILDING
10 CAUSEWAY STREET
BOSTON, MASSACHUSETTS 0222-1074

FILED
CLERKS OFFICE

**JAMES M. LYNCH**
CLERK

(617)565-6051
FAX (617)565-6087

**WORCESTER OFFICE**
595 MAIN STREET
WORCESTER, MA 01608-2076
(508)793-0518
FAX (508)793-0541

8/19/04

U.S. DISTRICT COURT
DISTRICT OF MASS.

United States District Court
District of Massachusetts
Harold D. Donohue Federal Building & Courthouse
595 Main Street
Worcester, MA 01608

Bankruptcy Case/Adversary Preceeding In Re: 99-41823jbr
Bankruptcy Case/Adversary Preceeding In Number: 99-4240

The following is being transmitted to your court:

- ☑ Copy of Notice of Appeal with Order
- ☑ Copy of Bankruptcy Docket
- ☑ Copy of Election to have appeal heard in District Court
- ☐ Copy of Motion for Leave to Appeal With/Without Objections
- ☑ Other Order for Transfer of Appeal

**Please acknowledge receipt of these documents by signing the copy of this letter and returning it to this office for filing.**

○ United States Bankruptcy Court
1101 O'Neill Federal Building
10 Causeway Street
Boston, MA 02222-1074

◉ United States Bankruptcy Court
211 Donohue Federal Building
595 Main Street
Worcester, MA 01608-2076

---

Date:8/19/04

James M. Lynch
Clerk, U.S. Bankruptcy Court

By the Court,

Janet Keller
Deputy Clerk
(508) 770-8946

---

Receipt is acknowledged of the enclosures referred to above.

District Court Docket Number: **04-40162**

Date: 8-19-04

By: Kathy Hassett
Deputy Clerk

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| AARON H. WATMAN | ) | Chapter 7 |
| | ) | Case No. 99-41823-JBR |
| Debtor. | ) | |
| | ) | |
| | ) | |
| LAWRENCE GROMAN, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. 99-4240 |
| AARON H. WATMAN, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

## NOTICE OF APPEAL OF THE DEBTOR, AARON H. WATMAN OF THE MEMORANDUM OF DECISION AND ORDER DATED JUNE 29, 2004

Aaron H. Watman, the Debtor/Defendant in the above-captioned adversary proceeding,

appeals pursuant to 28 U.S.C. § 158(b)(1) from the Order Following Second Remand from

Bankruptcy Appellate Panel (the "Order") and Memorandum of Decision of the Honorable Joel B.

Rosenthal, United States Bankruptcy Judge, entered in this adversary proceeding on June 29, 2004,

and in which the Court denied the Debtor/Defendant his discharge pursuant to 11 U.S.C.

§ 727(a)(7). A copy of the Order is attached hereto as **Exhibit A**. The names of all parties to the

Order appealed from and the names, address and telephone numbers of their respective attorneys are

as follows:

Counsel for Lawrence Groman:        Joseph S.U. Bodoff
                                    Bodoff & Slavitt LLP
                                    225 Friend Street
                                    Boston, Massachusetts 02114-1812
                                    Tel:    (617) 742-7300

Counsel for Aaron H. Watman:          Peter J. Haley
                                      Leslie F. Su
                                      Gordon Haley LLP
                                      101 Federal Street
                                      Boston, Massachusetts 02110
                                      (617) 261-0100

                                            AARON H. WATMAN

                                            By his attorneys,

                                            _Unishi Su_____
                                            Peter J. Haley
                                              BBO No.: 543858
                                            Leslie F. Su
                                              BBO No.: 641833
                                            Gordon Haley LLP
                                            101 Federal Street
                                            Boston, Massachusetts 02110
                                            (617) 261-0100

Dated: July 7, 2004

## CERTIFICATE OF SERVICE

I, Leslie F. Su, hereby certify that I served the foregoing **NOTICE OF APPEAL OF THE DEBTOR, AARON H. WATMAN, OF THE MEMORANDUM OF DECISION AND ORDER DATED JUNE 29, 2004** by causing true and correct copies of the same to be sent by regular, postage prepaid mail this 7th day of July, 2004, to

Joseph S.U. Bodoff, Esquire
Bodoff & Slavitt LLP
225 Friend Street
Boston, Massachusetts 02114-1812

                                            _Unishi Su_____
                                            Leslie F. Su

P:\Clients\Watman\Plead\99-4240\Notice of Appeal of Dec. & Order 7-2-04.doc

2

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re AARON H. WATMAN,<br>        Debtor. | )<br>)<br>) | Chapter 7<br>Case No. 99-41823-JBR |
| | ) | |
| LAWRENCE GROMAN,<br>        Plaintiff,<br>v. | )<br>)<br>)<br>) | Adversary Proceeding<br>No. 99-4240 |
| AARON H. WATMAN,<br>        Defendant. | )<br>)<br>) | |

**ORDER FOLLOWING SECOND REMAND FROM BANKRUPTCY APPELLATE PANEL**

In accordance with the Memorandum of Decision on Second Remand From Bankruptcy Appellate Panel, issued contemporaneously herewith, judgment shall enter for the Plaintiff on Count II and the Debtor's discharge is hereby DENIED pursuant to 11 U.S.C. § 727(a)(7).

Judgment shall enter for the Defendant on Count I of the Complaint.

Dated: June 29, 2004

                           Joel B. Rosenthal
                           United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re AARON H. WATMAN, | ) | Chapter 7 |
| Debtor. | ) | Case No. 99-41823-JBR |
| | ) | |
| | ) | |
| LAWRENCE GROMAN, | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| v. | ) | No. 99-4240 |
| | ) | |
| AARON H. WATMAN, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION ON SECOND REMAND FROM BANKRUPTCY
APPELLATE PANEL**

This matter came before the Court after remand from the Bankruptcy Appellate Panel in

which a majority of the panel concluded that the findings and rulings made by this Court in its

Memorandum of Decision On Remand, dated October 28, 2002, following remand of this matter

from the Court of Appeals of the First Circuit, did not comport with the "letter and spirit" of the

mandate. Specifically the majority concluded that

> We are unable to find in the court's opinion findings addressing
> how Lowell Dentistry's retention of possession, benefits or use of
> Children's Dental's property affected the creditors of the latter.
> The financial condition of Children's Dental before and after the
> transfers is not mentioned; the cumulative effect which the
> transfers might have had on Children's Dental's liquidation is not
> addressed, and there is little or no reference to the general
> chronology of events of transactions under inquiry.

Following the remand, this Court held a status conference at which the parties agreed that

no further evidence was needed. The Court offered the parties the opportunity to submit further

proposed findings of fact and conclusions of law. After reviewing those submissions, as well as

reviewing the entire record on appeal, including the trial transcript, the Court adopts its previous

findings and conclusions,[1] with the exception of any findings or conclusions that are inconsistent with those set forth below (including the finding that "there was no evidence of the value of goodwill of the practice as compared to any goodwill that attached to solely to Watman as an individual practitioner"[2]), Memorandum of Decision on Remand, dated October 28, 2002 at 3, and makes the following additional findings.

A. *General chronology of events*

1. In 1988 Aaron H. Watman, a dentist, joined Children's Dental Associates of Lowell-Lawrence Groman, D.M.D., P.C. ("Children's Dental") which was then owned by Lawrence Groman, D.M.D. After one year Groman and Watman agreed that Watman would purchase 50% of Children's Dental with payments to be made over a ten-year period. In 1992 they agreed that Watman would purchase Groman's 50% interest and the payment schedule was extended accordingly. Watman made monthly payments of $5,600 until September 1997 when he claimed to be having difficulty making the payments. Groman agreed to reduce the monthly payments to $3,000. Watman made two payments at the reduced rate and then stopped making payments altogether. Groman sued Watman and Children's Dental, which was jointly liable with Watman for the balance, and obtained a final judgment of $437,918.

2. In approximately March 1999, Groman filed a state court complaint seeking the appointment of a receiver for Children's Dental. That hearing was originally scheduled for

---

[1]Many of those findings are restated for the convenience of the reader.

[2] The Court has modified this finding as set forth in paragraph 21, *infra*, to rectify the error noted by Judge deJesus in her dissenting opinion. As she correctly noted, there is evidence of the value of the goodwill although the dollar value cannot be determined with mathematical precision.

2

March 17, 1999 but was continued to March 24, 1999 by agreement of counsel.  At trial Watman

testified that he was not concerned about having a receiver operate the business but that he also

knew an appointment of a receiver would threaten the continued operation of his practice.[3]

     3.  On March 24, 1999 Children's Dental filed a voluntary petition pursuant to Chapter

11 of the United States Bankruptcy Code.  The case was subsequently converted to one under

Chapter 7.

---

[3]Specifically Watman testified as follows:

> Q: ...You knew that if Dr. Groman was successful in his
> receivership action, that a receiver would be appointed to come in
> and run the business, correct?
>
> A: Yes.
>
> Q: And that concerned you, didn't it?
>
> A: No.
>
> Q: It did not concern you--
>
> A: I mean--
>
> Q: That a receiver might run the business?
>
> A: No.... Whether a receiver came in, I didn't--at the time I didn't
> really understand what a receiver meant.  The only thing I
> understood was that they would -- I didn't – and I don't even know
> that they run the practice.  I know that they would come in and
> oversee the money that came in.  That's the way I understood it.
>
> Q: But you also knew that if Dr. Groman was successful in his
> efforts, it was going to threaten the continued operation of your
> business, didn't you?
>
> A: Yes.

(Trial Transcript at 41-42).

4. Aaron H. Watman, who had filed his bankruptcy petition on March 22, 1999, was the sole officer and director of Children's Dental on March 24, 1999. He had been in control of Children's Dental for several years prior to its bankruptcy.

5. At the time of its bankruptcy, Children's Dental had six scheduled unsecured claims: the $437,918.00 claim arising out of the judgment held by Groman, and five other claims totaling $1,716.72. It had scheduled a total of $112,202.33 of personal property that included approximately $30,000 in cash and $69,000 in accounts receivable, both of which it turned over to its Chapter 7 Trustee. Goodwill was not listed as an asset.

6. In January 1999 the law firm of Devine Millimet & Branch prepared the corporate documentation to form Lowell Dentistry for Children, P.C. ("Lowell Dentistry") although Lowell Dentistry was not actually incorporated until March 31, 1999. Children's Dental paid the law firm for this work

7. On March 18, 1999 Watman wrote 37 checks totaling $42,011.49 from Children's Dental's account; of these checks $14,702.02 were prepayments for April 1999 expenses, including $2,982.00 paid to Lowell Doctors Park, Children's Dental's landlord, for April rent.

8. Watman also caused Children's Dental to pay its employees, including Watman, on March 18, 1999 even though those employees had been paid on March 10, 1999 and it was Children's Dental's practice to pay its employees biweekly.

9. On March 19, 1999 Watman, by letter to Attorney Michael Rosen, counsel for Children's Dental, terminated his employment with Children's Dental, effective immediately. By letter dated March 19, 1999 Watman, who had a covenant not to compete with Children's Dental, sent or caused to be sent a letter, prepared by Devine Millimet & Branch, informing

4

patients scheduled for treatment with Children's Dental that he was leaving Children's Dental and that, after a short period on his own, would be forming and joining Lowell Dentistry.

10. On or about March 25, 1999 Watman informed Lowell Doctors Park that Children's Dental was terminating its occupancy of the premises. He had told the landlord a day or two earlier that such termination was likely.

11. Watman operated a dental practice individually from March 24, 1999 to March 31, 1999. He ran his individual practice at the same location occupied by Children's Dental, and used the same furniture, equipment and supplies used by Children's Dental, and employed the same individuals, including an orthodontist and another pediatric dentist, who had been employed by Children's Dental.

12. Lowell Dentistry was incorporated on March 31, 1999 and began operations on that same day at the same location occupied by Children's Dental, using the same furniture, equipment and supplies used by, and with the same employees employed first by Children's Dental, and then Watman individually. Lowell Dentistry retained Children's Dental's patient records and serviced the same patients as had been patients of Children's Dental; most of Children's Dental's approximately 3,000 patients became patients of Lowell Dentistry.

13. Lowell Dentistry did not pay any of the April expenses that had been prepaid by Children's Dental. Lowell Dentistry began paying for those expenses in May 1999.

14. Watman is the president, sole shareholder and director of Lowell Dentistry.

15. The parties have stipulated that neither Watman nor Lowell Dentistry reimbursed or paid Children's Dental for the cash, furniture, equipment and supplies used by Watman and then Lowell Dentistry in their practice. Lowell Dentistry collected Children's Dental's account

5

receivables and turned that money over to Children's Dental's Chapter 7 Trustee. Moreover

Watman testified that the accounts receivable generated by him during the few days in March

1999 when he practiced as a solo practitioner were turned over to Children's Dental. There was

no evidence of the value of these receivables.[4]

16. Watman transferred virtually all of Children's Dental's entire business to Lowell

Dentistry without consideration.

17. Attorney Rosen testified that the intent of establishing Lowell Dentistry was so that it

could provide services for Children's Dental to operate.[5] This testimony is not credible; after

_____

[4]Exhibit P-5 is a copy of Children's Dental's general ledger. The Court cannot discern
from the ledger what receivables, if any, were generated during the period March 24, 1999 to
March 31, 1999 and credited to Children's Dental.

[5]Attorney Rosen testified as follows:

> Q: Okay. And you were aware, were you not, on March 19[th], 1999
> that Dr. Watman had resigned from Children's Dental, and that he
> would be forming and joining Lowell Dentistry for Children?
>
> A: Yes.
>
> Q: And did you at any time believe that to be inconsistent with the
> reorganization of Children's Dental?
>
> A: No, I did not.
>
> Q: And why was that?
>
> A: The idea was to have Lowell Dentistry for Children provide I
> guess what you would call management and consulting services so
> that the company could continue to operate on a day-to-day basis.
> Patients should-- could continue to be treated, and the value
> preserved so we could go forward and either try and reach a
> settlement or try and reach a chapter 11 plan that could be
> confirmed.

6

Lowell Dentistry took over Children's Dental's practice on March 31, 1999, there was no practice left for Children's Dental to operate. Moreover there was no writing evidencing any agreement between the two corporations, each of which was controlled by Watman.

18. The timing of the events demonstrates a scheme to prevent Groman from enforcing his judgment against Children's Dental. Between March 17, 1999 (the date of the originally scheduled state receivership hearing) and March 24, 1999 (the date on which Watman caused Children's Dental to file a Chapter 11 petition even though, by continuing to treat its patients under his individual practice, he virtually shut down Children's Dental), Watman's actions were designed to hinder Groman's collection actions. Watman was quickly and systematically taking the steps necessary to ensure that Lowell Dentistry could use Children's Dental's assets unencumbered by the Groman debt.

B. *Financial condition of Children's Dental before and after the transfer.*

19. Although no witness testified regarding the value of Children's Dental as a going concern, its Statement of Financial Affairs indicates that it had a profit for fiscal years[6] ending September 1997 ($55,601.00), September 1998 ($25,116.00), and for the six month period from October 1, 1998 through March 24, 1999 ($12,000). The profits, at least with respect to fiscal years ending September 1997 and 1998, were distributed to Watman. Although those profits for the year ending September 1998 were not sufficient to pay Groman at the reduced rate of $3,000

---

(Trial Transcript at 95-96).

[6]Children's Dental was on a October 1 to September 30 fiscal year. Although answer to Question 1 of the Statement of Financial Affairs refers to income for fiscal years ending September 1996 and September 1997, those dates are erroneous. The correct dates for "the two years immediately preceding this [the year in which the petition was filed] calender" are September 1997 and September 1998, respectively.

per month, those profits were available to reduce the debt owed to Groman by Watman and Children's Dental.

20. In his Schedule B, Watman valued his 100% interest in Children's Dental at $1.00, a figure which this Court finds has no bearing to the actual value of Children's Dental as a going concern.

21. The value of the goodwill that Watman transferred out of Children's Dental and into Lowell Dentistry cannot be determined with mathematical certainty. It is clear, however, that Children's Dental had value to be protected; it had a noncompetition agreement with Watman. It had other professional employees besides Watman.

22. The best way to test the value that Children's Dental had would have been to conduct a sale as a going concern. Watman's actions, however, effectively deprived the Chapter 7 Trustee from conducting such as sale.

23. The Court is aware that in December 2001, after the conclusion of the trial in this case, the Chapter 7 Trustee of Children's Dental and Watman reached an agreement whereby Watman purchased certain furniture and equipment of Children's Dental and obtained a release of claims which Children's Dental may have had against him. By the time that the settlement was negotiated, Watman had been operating as Lowell Dentistry for over two and a half years. Children's Dental had not operated for this same period. Consequently, the value of the settlement is not indicative of the value of Children's Dental had as a going concern in March 1999.

24. The only property remaining in Children's Dental's estate for liquidation by its Chapter 7 Trustee consisted of accounts receivable, an obsolete computer that Lowell Dentistry

8

originally used then stopped using at some point, furnishings, decorations, and a box of dental supplies of unknown value. Moreover the parties stipulated that, at the time of trial in this matter some two years after the bankruptcy was filed, Children's Dental's Chapter 7 Trustee had not liquidated any of the tangible assets. These assets had inconsequential value to the estate.

C. *How did Lowell Dentistry's retention of possession, benefits or use of Children's Dental's property affect the latter's creditors?*

25. Lowell Dentistry's retention of assets harmed Children Dental's creditors because, as a result of the transfer by possession, fewer assets, including cash, were available for distribution to Children's Dental's creditors.

26. At the time of the filing of its bankruptcy, Children's Dental had six general unsecured creditors with claims totaling $439,634. Five creditors whose claims arose out of the operations of the business held claims totaling $1,716.72. Groman held the remaining 99.6% of the unsecured debt.

27. Had Watman not caused Children's Dental to prepay April 1999 expenses for the benefit of Lowell Dentistry, additional funds would have been available to pay Children's Dental's creditors. If Children's Dental had continued to operate after March 31, 1999, it would have had sufficient assets to pay its trade creditors in the ordinary course although not enough assets to pay the judgment it and Watman jointly owed to Groman.

28. The retention of Children's Dental's patient records provided Watman and Lowell Dentistry with a ready-made patient base. The retention of Children's Dental's leased premises, equipment, and supplies, to say nothing of the Lowell Dentistry's employment of Children's Dental's employees on the same terms and conditions as governed their previous employment,

9

ensured Watman and Lowell Dentistry of a seamless transition which was designed to and did virtually guarantee that what was and should have continued to be Children's Dental's practice would continue uninterrupted.

29. Watman's actions deprived Children's Dental's Chapter 7 Trustee of the opportunity to conduct a sale of Children's Dental as a going concern. In effect, Watman stripped a once profitable practice of much of its tangible and intangible assets, including goodwill, employees, and patient records, and deprived it of any means of generating a profit.

D. *Indicia of fraudulent intent*

30. Despite the fact that Watman did not take title to the furnishings and equipment of Children's Dental, and had even stored Children's Dental's computer in the basement, he nevertheless took the value of Children's Dental, first for himself and then transferred it to Lowell Dentistry, when he continued to operate virtually the same business, at the same location, using the employees, equipment and supplies, and importantly the same patient records to treat Children's Dental's patients.

31. The testimony that he was creating Lowell Dentistry to preserve the value of Children's Dental is not credible. He created Lowell Dentistry to get out from under his and Children's Dental's obligation to Groman. Lowell Dentistry was the vehicle to maintain the benefits but not the burdens of Children's Dental's business.

32. The creation of Lowell Dentistry and the transfer of Children's Dental's practice to it was done to hinder, delay and defraud Groman. Rather than enter into further attempts to negotiate with Groman and rather than terminate his employment with Children's Dental and abide by the noncompetition agreement, Watman took virtually all of Children's Dental's assets,

10

tangible and intangible, and transferred them to his new corporation.

33. Watman's actions fall within the exceptions to discharge set forth in Section 727(a)(7), incorporating section 727(a)(2)(A).

A. Watman is an insider of Children's Dental.

B. Watman caused a transfer by possession of the tangible and intangible assets of Children's Dental, as set forth above, first for himself individually, and then by Lowell Dentistry, Watman's professional corporation.

C. There is no evidence of any consideration paid by Watman or Lowell Dentistry. Although Watman testified that he generated accounts receivable for Children's Dental's benefit during the few days between March 24 and March 31, 1999, there is no evidence as to the amount of such receivables generated or collected.

D. Prior to the transfers by possession, Children's Dental had generated profits which were paid to Watman as dividends. Although the "profits" were achieved at times by failing to make the monthly payment to Groman, there is nothing in the record to demonstrate that Children's Dental was financially unable to consistently make these payments. Certainly whatever negative cash flow Children's Dental would have had if it had made the Groman payments was made far worse when it was left with no income but the same obligation.

E. The cumulative effect of Watman's actions, especially during the latter part of March 1999, resulted in the diminution and potentially the complete elimination of Children's Dental's going concern value.

F. Watman's actions were not done in secret. That they were not secretive, however, is not sufficient to overcome the conclusion that they were intended to hinder, delay and defraud

11

Groman.  Consequently his discharge should be denied.

A separate judgment shall issue.

Dated:: June 29, 2004

Joel B. Rosenthal
United States Bankruptcy Judge

12