## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 SEP 29 P 3: 20

U.S. DISTRICT COURT
DISTRICT OF MASS.

In re                                  )
                                       )
AARON WATMAN,                          )
                                       )
            Debtor                     )        Bankruptcy Appeal
                                       )        Civil Action No. 04-40162
                                       )
                                       )
AARON H. WATMAN,                       )
            Defendant/Appellant        )        Bankruptcy Case No. 99-41923
                                       )        Adversary Proceeding No. 99-4240
v.                                     )
                                       )
LAWRENCE GROMAN,                       )
            Plaintiff/Appellee         )
                                       )

## BRIEF OF APPELLEE,
## LAWRENCE GROMAN

Joseph S.U. Bodoff (BBO #549116)
Evan Slavitt (BBO #466510)
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114-1812
(617) 742-7300

September 29, 2004

# TABLE OF CONTENTS

I.  COUNTER-STATEMENT OF ISSUE PRESENTED FOR REVIEW................1

II.  COUNTER-STATEMENT OF THE CASE ...........................................................1

   A    Procedural History.........................................................................................1

   B.    Statement of Facts ........................................................................................2

      1.    The Evidence ..........................................................................................2

      2.    The First Circuit Decision .....................................................................8

      3.    The Bankruptcy Court's Decision .......................................................11

III.  SUMMARY OF ARGUMENT.......................................................................12

IV.  ARGUMENT .................................................................................................12

   A.    The Standard of Review .............................................................................12

   B.    The Decision of the Court of Appeals, Not the Bankruptcy Appellate
      Panel, Controls the Issues on this Appeal. ................................................12

   C.    The Bankruptcy Court Adequately Addressed All Issues Raised by the
      First Circuit..................................................................................................13

      1.    The Significance of the Transfer of Going Concern Value...............14

      2.    Retention of Possession, Benefit or Use of Property.........................16

      3.    The Lack or Inadequacy of Consideration ........................................17

      4.    Financial Condition Before and After the Transfer...........................17

      5.    Existence or Cumulative Effect of Transactions or Series of
         Transactions After Groman Obtained His Judgment. ...................18

      6.    The Shifting of Assets to a Corporation Wholly Controlled by the
         Debtor ...............................................................................................21

   D.    Watman's Arguments Are Misleading and Without Merit. .......................21

V.  CONCLUSION ...............................................................................................26

# I.   COUNTER-STATEMENT OF ISSUE PRESENTED FOR REVIEW

The sole issue presented for review is whether the Bankruptcy Court followed the instructions of the United States Court of Appeals for the First Circuit on the question of whether the Debtor acted with intent to hinder, delay or defraud a creditor when he caused the corporation that he controlled to transfer all or virtually all of its assets on the eve of a hearing to appoint a receiver for the corporation.

# II.   COUNTER-STATEMENT OF THE CASE

## A   Procedural History

On March 22, 1999, Aaron Watman ("Watman") filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  On August 27, 1999, Lawrence Groman ("Groman") filed a complaint objecting to Watman's discharge under section 727 of the Bankruptcy Code and the dischargeability of his claims against Watman pursuant to section 523 of the Bankruptcy Code.  After a trial, at which the Bankruptcy Court ruled in favor of Watman, Groman appealed the matter to the Bankruptcy Appellate Panel, which affirmed.  Upon a subsequent appeal by Groman, the United States Court of Appeals for the First Circuit reversed and remanded to the Bankruptcy Court for further findings consistent with the First Circuit's opinion.  On remand, the Bankruptcy Court ruled in Groman's favor and Watman appealed to the Bankruptcy Appellate Panel, which, in a split decision,[1] remanded the matter back to the Bankruptcy Court.  On the second remand, the Bankruptcy Court again ruled in favor of Groman and this appeal from

---

[1] Judges Vaughn and Lamoutte wrote the majority opinion.  App., pp. 511-20.  Judge de Jesús wrote a lengthy dissent, in which she argued that the Bankruptcy Court's decision denying Watman his discharge should be affirmed.  App., pp. 521-31.

Watman was then filed. The issue faced by this Court is whether the Bankruptcy Court has now complied with the First Circuit's directions.

**B.    Statement of Facts**

*1.    The Evidence*

This case arises out of Watman's intentional transfer of the assets of a dental practice in order to prevent Groman from collecting a debt owed to him by Watman and the dental practice. The dental practice was owned by Childrens Dental Associates of Lowell – Lawrence Groman, D.M.D., P.C. ("Childrens Dental"), a corporation formerly owned by Groman but at the time in question completely controlled by Watman. App., p. 80. The Debtor first caused the corporation to transfer the assets to himself and then to a new corporation established solely for the purpose of receiving the transferred assets. All of the transfers were done immediately prior to Watman filing a Chapter 7 petition on his behalf and a Chapter 11 petition on behalf of Childrens Dental.

Most of the facts are not in dispute and are contained in a pre-trial stipulation entered as Exhibit A at trial. See App., pp. 77-85. On December 14, 1998, Groman obtained a judgment against Watman and Childrens Dental in the amount of $437,918.00 in Middlesex Superior Court. The Debtor was the sole officer and director of Childrens Dental. In or about March 1999, Groman filed a complaint to appoint a receiver for Childrens Dental. A hearing on the appointment of a receiver was scheduled for March 17, 1999 but was continued by agreement of counsel to March 24, 1999. App., p. 77. The Debtor filed his Chapter 7 petition on March 22, 1999 and caused Childrens Dental to file a Chapter 11 petition on March 24, 1999. App., p. 80. The schedules show that when it filed its Chapter 11 petition Childrens Dental had only six general unsecured

creditors totaling $439,634.72. Groman's debt was scheduled at $437,918.00. The remaining five creditors totaled only $1,716.72. App., p. 266.

The Debtor began planning to avoid the consequences of Groman's collection efforts when, on January 20, 1999, only one month after Groman obtained his judgment, the law firm of Devine, Millimet & Branch, which was counsel for Childrens Dental, drafted Articles of Organization for a new corporation to take over the dental practice. App., p. 80. An invoice from that firm was admitted into evidence at trial. It shows the rendering of the services, the billing of those services to Childrens Dental and the payment for those services by Childrens Dental from a retainer that Childrens Dental had paid the firm. App., p. 355. The Debtor further testified at trial that he did not protest the application of Childrens Dental's retainer for these services. App., pp. 142-43.

Most of Watman's efforts to arrange his affairs to evade Groman's collection efforts occurred between the date of the originally scheduled hearing on the appointment of a receiver and the date Watman caused Childrens Dental to file its Chapter 11 petition. On March 18, 1999, the day after the originally scheduled receivership hearing, Watman caused Childrens Dental to issue 37 checks totaling $42,011.49. App., p. 78-79. Many of these checks were prepayments of expenses for the month of April, including office rent, equipment rent, health insurance, a car payment and maintenance. App., pp. 79-80. The Debtor also caused Childrens Dental to accelerate the payroll of Childrens Dental's employees, including Watman. App., p. 78. Although payroll was made every two weeks, ADP made withdrawals from Childrens Dental's bank account on March 10, 1999

and March 18, 1999 (the day after the originally scheduled receivership hearing). App., pp. 78, 81.[2]

These transfers were not simply payments of legitimate debts of Childrens Dental, but prepayments of expenses to allow Watman to continue to operate the Childrens Dental dental practice under a new corporate guise, free of the claims of Groman. The transition from Childrens Dental to the new corporation occurred in two steps. Although Childrens Dental filed its Chapter 11 petition on March 24, 1999, by that date it had ceased operating. App., p. 121. From March 24, 1999 until March 31, 1999, Watman operated a dental practice under his own name at the same location as Childrens Dental using the same equipment, the same employees, the same patient records and many of the same supplies. App., p. 80. On March 31, 1999, Lowell Dentistry for Children, P.C. ("Lowell Dentistry") was incorporated and immediately took over the dental practice that was formerly owned and operated by Childrens Dental. The Debtor was the sole officer, director and shareholder of Lowell Dentistry. As Watman did during the week prior to the incorporation of Lowell Dentistry, Lowell Dentistry operated out of the same location as Childrens Dental using the same equipment, the same employees, the same patient records and many of the same supplies. App. p. 80. No payments were made to Childrens Dental, either by Watman or Lowell Dentistry, for the going concern business that they acquired from Childrens Dental, the physical assets accompanying that business, or the goodwill associated therewith. App., pp. 124-25.

In addition to prepaying a number of expenses, as described above, Watman took a number of other actions to strip Childrens Dental of its assets. On March 19, 1999 (two

---

[2] Each of these payments is listed on the bank account register and the general ledger that are made a part of the Appendix on this appeal. App., pp. 289-306, 335-51. The pattern of payments made by Childrens Dental for each of the payees can readily be seen from the general ledger.

days after the originally scheduled receivership hearing), Watman wrote a letter to counsel for Childrens Dental terminating his employment with Childrens Dental. App., p. 80. Despite the termination of his employment, however, he continued to work at the Childrens Dental location until he opened his own practice there on March 24, 1999. App., pp. 118-20. On either March 23 or 24, 1999, Watman informed Steven Reichheld, the president of the landlord, that Childrens Dental might be terminating its occupancy of the premises. He followed that up with a conversation on either March 25 or 26, 1999 with Evan Corovas, the treasurer of the landlord, stating that Childrens Dental would, in fact, be terminating its occupancy. Notably, Watman owned a 12.5 percent interest in the building where Childrens Dental's offices were located. App., p. 80.

All of the employees of Childrens Dental were offered positions at Lowell Dentistry on the same terms and all of them accepted the offer of employment. App., p. 176. Most of the approximately 3,000 patients that were patients of Childrens Dental at the time it ceased operations became patients of Lowell Dentistry. App., pp. 127-28.

In addition, Watman, through his own testimony, supported Groman's claim that he made transfers with intent to hinder, delay or defraud Groman shortly before he filed a personal bankruptcy petition and also caused his solely-owned corporation to file a Chapter 11 petition. The Debtor testified:

> Q.    And, in fact, those two attorneys helped you plan in the eventuality that Dr. Groman successfully obtained a judgment against you and Children's Dental Associates, correct?
>
> A.    They did.
>
> Q.    And did you, in fact consult those attorneys after Children's Dental Associates brought the receivership

action against – or when Dr. Groman brought the
receivership action against Children's Dental Associates?

A.      I did.

Q.      And, in fact, you discussed with those attorneys the
way to be able to avoid the consequences of the
receivership action, did you not?

A.      The way I understood it was that my attorney was
still discussing things with someone from your office at the
time, and then that's why they were going to move the
receivership hearing up a week, because there were still
discussions going on.  That's how I understood it.

Q.      Okay.  Perhaps you didn't understand my question.
You knew that if Dr. Groman was successful in his
receivership action, that a receiver would be appointed to
come in and run the business, correct?

A.      Yes.

Q.      And that concerned you, didn't it.

A.      No.

Q.      It did not concern you –

A.      I mean –

Q.      -- that a receiver might – might run the business?

A.      No.  The whole – at the time what – the way I
understood it was that we were in discussions that they're
going to move up – the only thing I was told was that your
office, your attorney from your office agreed to move it up
a week.  Whether a receiver came in, I didn't – at the time I
didn't really understand what the receiver meant.  The only
thing I understood was that they would – I didn't – and I
don't even know that they run the practice.  I know that
they would come in and oversee the money that came in.
That's the way I understood it.

Q.      But you also knew that if Dr. Groman was
successful in his efforts, it was going to threatened [*sic*] the
continued operation of your business, did you not?

A.    Yes.

Q.    And, in fact, you planned for that, did you not?

A.    I discussed it with my attorneys, yes.

Q.    Right.  And the formation of Lowell Dentistry for Children was part of that effort to make sure that Dr. Groman didn't shut down the business, wasn't it?

A.    I would – yes.

Q.    And, in fact, you couldn't get the corporation set up much -- or set up prior to March 31st, could you?

A.    I don't think we could.

Q.    Okay.  Which is the reason why, for a week's period of time, you operated the dental practice under your own name, correct?

A.    I would say Yes.

Q.    Okay.  It wasn't your intention to operate it on a long-term basis under your own name –

A.    No.

Q.    -- correct?  When you resigned from Children's Dental Associates on March the 19th, you were still hopeful that you'd be able to work things out with Dr. Groman, weren't you?

A.    Yes, I was.

Q.    And I think it's been your testimony previously that you were hopeful that you would be able to work things out with Dr. Groman all the way up to the time that Children's Dental filed its Chapter 11 petition, correct?

A.    And I guess even after that.

Q.    Okay.  And I believe it was your testimony before that if you were able to resolve your differences with Dr. Groman, you would have rejoined Children's Dental Associates, do you recall that?

A.    Yes.

Q.    And would that still be your position today?

A.    Yes.

App., pp. 143-46. By Watman's own testimony, therefore, he specifically set up Lowell Dentistry in order to insulate the dental practice from Groman's collection efforts and intended to restore the practice back to Childrens Dental if he were able to resolve his differences with Groman.

2.    *The First Circuit Decision*

Because the outcome of this appeal depends entirely on whether the Bankruptcy Court followed the First Circuit's directive, the analysis of this appeal must start with the First Circuit's decision. *In re Watman*, 301 F.3d 3 (1st Cir. 2002). As will become apparent, the First Circuit believed that faulty analysis by the Bankruptcy Court with regard to the transfers made by Watman and the badges of fraud that are central to any analysis of fraudulent intent, made the Bankruptcy Court's decision *of the intent issue* flawed. Contrary to what Watman suggests, the First Circuit was not concerned with whether there were prohibited transfers standing on their own, but only on how those transfers bore on the issue of intent.

The First Circuit first noted that in order for Groman to prevail he would have to carry the following burden:

> In order to prevail under § 727, Groman had to convince the bankruptcy court that Watman acted with the intent to hinder, delay, or defraud his creditors (including Groman) from collecting on their debts.

*Id.* at 8. The Court then explained that intent normally must be determined by looking at circumstantial evidence, basing the analysis upon the consideration of at least seven indicia of fraudulent intent:

> Given the practical difficulty of mounting direct evidence of the debtor's intent, few cases turn on such proof. Instead, looking to the circumstances surrounding the transfer, courts have identified several objective indicia that, taken together, strongly indicate fraudulent intent. Those indicia include: (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry . . . and (7) an attempt by debtor to keep the transfer a secret . . . . The shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud.

*Id.* at 8 (citations omitted).

The Court took into account that the Bankruptcy Court relied heavily on the conclusion that the transfers were disclosed in the bankruptcy schedules, but that the Bankruptcy Court proceeded without analyzing the other badges of fraud. The Court first observed:

> There is considerable force to Groman's claim that there is no logical explanation for Watman's conduct here except an intent to delay, hinder, or defraud his creditors, particularly Groman. We find no evidence of any consideration that passed between Childrens Dental and Lowell Dentistry. Watman was present on all sides of the transaction. The timing of events, in light of the pendency of the receivership proceedings, is suspect.

*Id.* at 10. It was only in this context that the First Circuit criticized the Bankruptcy Court for not adequately explaining what it believed had been transferred, a central element to the badges of fraud set forth in the opening paragraphs of the Court's analysis (and quoted above).

The Court further found "unsatisfactory" the Bankruptcy Court's analysis of whether assets were transferred. To understand the First Circuit's concern, it is worth addressing that portion of the Bankruptcy Court's original decision that was, in turn, quoted by the First Circuit:

> "There is no -- was no transfer here in the customary sense. Possibly there was some transfer under the broad definition of transfer under Section 101 of the Bankruptcy Code, but I am not willing to and cannot find constructive actual intent on top of a constructive transfer under Section 101. And even though possession can be a transfer, it seems to me that the type of transfer, if, in fact, there was one, is relevant to determination or an inference of intent. . . . The transfers, if they did take place at all, were not of the formal legal title nature, and to the extent that patients' files, records, et cetera, are property of the estate, which at least the defendant claims they're not, and I heard no evidence to the contrary, the defendant claiming that they were property of the individual patients -- to the extent that those are property of the estate, I find that they haven't been transferred, and they remain available to the Trustee for liquidation."

*Id.* at 10-11.

It was in this context that the Court of Appeals expressed concern that the Bankruptcy Court did not use the correct definition of "transfer." The First Circuit asserted that the Bankruptcy Court's discussion regarding the patient records was unhelpful and that the Bankruptcy Court did not address "the central question in *its* transfer analysis -- the going concern value of Childrens Dental independent of Watman and whether that was 'property' that was transferred out of Childrens Dental's estate by the creation of Lowell Dentistry." *Id.* at 19 (emphasis added). Commenting on the issue of whether going concern value was transferred, the Court noted:

> To be sure, Watman was free to resign from Childrens Dental. But it does not necessarily follow that he was free to take the practice with him. He stayed in the same office, retained all ten employees, continued to use the same equipment, and arguably succeeded in retaining the majority of Childrens Dental's approximately 3000 patients. At a minimum, these facts suggest the possibility that Watman transferred by possession the

goodwill and going concern value from Childrens Dental to Lowell
Dentistry without paying any consideration.

*Id.* at 12.

Having made the foregoing observations, the First Circuit summed up the

deficiencies in the Bankruptcy Court's analysis as follows:

> The bankruptcy court's analysis of the ***indicia of fraud*** was incomplete,
> limited as it largely was to the absence of secrecy and Watman's reliance
> on the advice of counsel. Left unexamined was the significance of the
> alleged transfer without consideration of the going concern value of
> Childrens Dental to Lowell Dentistry. That omission, in turn, left
> unexamined such familiar indicia of fraudulent intent as (1) the retention
> of possession, benefit or use of the property in question; (2) the lack or
> inadequacy of consideration for the transfer; (3) the financial condition of
> the party sought to be charged both before and after the transaction at
> issue; (4) the existence or cumulative effect of the pattern or series of
> transactions or course of conduct after the incurring of debt, onset of
> financial difficulties, or pendency or threat of suits by creditors; and (5)
> the shifting of assets by the debtor to a corporation wholly controlled by
> him. . . .
>
> Accordingly, we remand this case to the bankruptcy court for adequate
> findings on ***these*** issues.

*Id.* at 12-13 (citation omitted) (emphasis added).[3]

3.     *The Bankruptcy Court's Decision*

The remand from the First Circuit resulted in a second Bankruptcy Court decision

that, in turn, was reversed and remanded by the Bankruptcy Appellate Panel based on its

belief that in that second decision the Bankruptcy Court "did not follow the terms or

spirit of the mandate." App. p. 520. On remand from the Bankruptcy Appellate Panel,

the Bankruptcy Court wrote a 12-page Memorandum of Decision, containing 33 separate

---

[3] Throughout his brief, Watman constantly refers to an alleged requirement for "explicit" or "specific"
findings. Such a requirement is not found in the First Circuit's decision which, as the quoted language
makes clear, required only "adequate" findings. It is that standard that controls and not Watman's invented
standard.

paragraphs setting forth in detail its findings of fact, in which it discussed each of the issues set forth by the First Circuit in the above quote. As will be discussed more fully hereafter, these findings more than adequately address the mandate by the First Circuit.

## III.    SUMMARY OF ARGUMENT

The Bankruptcy Court followed the First Circuit's mandate to analyze the intent issue using the well-established badges of fraud. These findings are supported by the evidence and are consistent with the First Circuit's opinion. Watman misstates the First Circuit's opinion in making his arguments that the Bankruptcy Court did not follow or went beyond the First Circuit mandate.

## IV.    ARGUMENT

### A.    The Standard of Review

In reviewing a decision of the bankruptcy court, the reviewing court applies a clearly erroneous standard to review the bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law. *In re DN Associates*, 3 F.3d 512, 515 (1st Cir. 1993). While the issue of whether the Bankruptcy Court complied with the First Circuit's instructions is subject to *de novo* review, the findings of fact themselves are subject to the clearly erroneous standard.

### B.    The Decision of the Court of Appeals, Not the Bankruptcy Appellate Panel, Controls the Issues on this Appeal.

While not seriously argued by Watman to the contrary, it bears stating that the decision of the Court of Appeals – and only that decision – is controlling in this case. As

such, what the Bankruptcy Appellate Panel thought of the Bankruptcy Court's first

decision on remand or the additional findings that the Bankruptcy Appellate Panel

directed the Bankruptcy Court to make, are not relevant.[4]

> As the First Circuit observed in this case:
>
> Whether the intermediate appellate body is the district court or the BAP,
> our focus remains on the decision of the bankruptcy court. We examine
> that court's findings of fact for clear error and afford de novo review to its
> conclusions of law. *See Martin* v. *Bajgar) (In re Bajgar)*, 104 F.3d 495,
> 497 (1st Cir. 1997). "Since this is exactly the same regimen that the
> intermediate appellate tribunal must use, we exhibit no particular
> deference to the conclusions of that tribunal (be it the district court or the
> BAP)." *Brandt* v. *Repco Printers & Lithographics, Inc. (In re Healthco)*,
> 132 F.3d 104, 107 (1st Cir. 1997); *Grella* v. *Salem Five Cent Sav. Bank*,
> 42 F.3d 26, 30 (1st Cir. 1994).

301 F. 3d at 7.

## C.  The Bankruptcy Court Adequately Addressed All Issues Raised by the First Circuit.

The First Circuit raised six issues for the Bankruptcy Court to explore:

1) "[T]he significance of the alleged transfer without consideration of the going concern value of Childrens Dental to Lowell Dentistry." 301 F.3d at 13.

2) "[T]he retention of possession, benefit or use of the property in question." *Id.*

3) "[T]he lack or inadequacy of consideration for the transfer." *Id.*

4) "[T]he financial condition of the party sought to be charged both before and after the transaction at issue." *Id.*

5) "[T]he existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors." *Id.*

---

[4] Given the peculiar structure of bankruptcy appeals, this Court and the Bankruptcy Appellate Panel are of equal dignity and neither may defer to the other. Thus, for the purposes of ***this*** appeal, this Court takes as its text the First Circuit opinion and applies that paradigm to the Bankruptcy Court's analysis.

6) "[T]he shifting of assets by the debtor to a corporation wholly controlled by him." *Id.*

Each of these issues will be explored separately.

1.    *The Significance of the Transfer of Going Concern Value*

The Bankruptcy Court found the transfer of the going concern value of the

business stripped Childrens Dental of its value and transferred that value to Lowell

Dentistry.  The Bankruptcy Court made the following key findings:

Watman transferred virtually all of Children's[5] Dental's entire business to Lowell Dentistry without consideration.

App., p. 567.

Rather than enter into further attempts to negotiate with Groman and rather than terminate his employment with Children's Dental and abide by the noncompetition agreement, Watman took virtually all of Children's Dental's assets, tangible and intangible, and transferred them to his new corporation.

App., p. 571-72.

The cumulative effect of Watman's actions, especially during the latter part of March 1999, resulted in the diminution and potentially the complete elimination of Children's Dental's going concern value.

App. p. 572.

The timing of the events demonstrates a scheme to prevent Groman from enforcing his judgment against Children's Dental.  Between March 17, 1999 (the date of the originally scheduled state receivership hearing) and March 24, 1999 (the date on which Watman caused Children's Dental to file a Chapter 11 petition even though, by continuing to treat its patients under his individual practice, he virtually shut down Children's Dental), Watman's actions were designed to hinder Groman's collection actions. ***Watman was quickly and systematically taking the steps necessary to***

---

[5] The actual name of the corporation was ***Childrens*** Dental of Lowell – Lawrence Groman, D.M.D., P.C. Quotations from the Bankruptcy Court's opinion using the word "Children's" are presented in this brief without further notation.

> *ensure that Lowell Dentistry could use Children's Dental's assets*
> *unencumbered by the Groman debt.*

App. p. 568 (emphasis added).

Contrary to Watman's assertions, the First Circuit did not ask the Bankruptcy Court to determine the value of the going concern, but simply to state the significance of the transfer. In fact, the Bankruptcy Court met the First Circuit's requirements by making the above findings alone. In addition, the Court made the following additional findings that the business did have value as a going concern:

> Although no witness testified regarding the value of Children's Dental as a going concern, its Statement of Financial Affairs indicates that it had a profit for fiscal years ending September 1997 ($55,601.00) and September 1998 ($25,116.00) and for the six month period from October 1, 1998 through March 24, 1999 ($12,000).

App., p. 568 (footnote omitted).

> The value of the goodwill that Watman transferred out of Children's Dental and into Lowell Dentistry cannot be determined with mathematical certainty. It is clear, however, that Children's Dental had value to be protected; it had a noncompetition agreement[6] with Watman. It had other professional employees besides Watman.

App., p. 569.

> The best way to test the value that Children's Dental had would have been to conduct a sale as a going concern. Watman's actions, however, effectively deprived the Chapter 7 Trustee from conducting such a sale.

App., p. 569.

In short, during this period of time, Watman, through a series of carefully orchestrated events, transferred the profitable business that was Childrens Dental to

---

[6] At the time Watman resigned from Childrens Dental, he was bound by an agreement not to compete with Childrens Dental. The Debtor has taken the position that the filing by him of his personal Chapter 7 bankruptcy discharged his obligation not to compete. His Chapter 7 petition was filed on March 22, 1999, yet the series of transactions that resulted in the transfer of the business from Childrens Dental to Lowell Dentistry began no later than March 17, 1999. In other words, the noncompetition agreement was in effect at the time he made the various transfers.

Lowell Dentistry without any consideration having been paid by Watman, leaving

Childrens Dental with little, if any, going concern value and the new business operated by

Lowell Dentistry free of Groman's claim.

2.    *Retention of Possession, Benefit or Use of Property*

The Bankruptcy Court made three key observations on "the retention of

possession, benefit or use of the property in question," as follows:

> Lowell Dentistry's retention of assets harmed Children [*sic*] Dental's
> creditors because, as a result of the transfer by possession, fewer assets,
> including cash, were available for distribution to Children's Dental's
> creditors.

App. p. 570.

> The retention of Children's Dental's patient records provided Watman and
> Lowell Dentistry with a ready-made patient base.  The retention of
> Children's Dental's leased premises, equipment, and supplies, to say
> nothing of the Lowell Dentistry's employment of Childrens Dental's
> employees on the same terms and conditions as governed their previous
> employment, ensured Watman and Lowell Dentistry of a seamless
> transition which was designed to and did virtually guarantee that what was
> and should have continued to be Children's Dental's practice would
> continue uninterrupted.[7]

App. pp. 570-71.

> Despite the fact that Watman did not take title to the furnishings and
> equipment of Children's Dental, and had even stored Children's Dental's
> computer in the basement, he nevertheless took the value of Children's
> Dental, first for himself and then transferred it to Lowell Dentistry, when
> he continued to operate virtually the same business, at the same location,
> using the employees, equipment and supplies, and importantly the same
> patient records to treat Children's Dental's patients.

App. p. 571.

---

[7] Although not specifically labeled by the Bankruptcy Court as such, this analysis is equally relevant to the
issue of goodwill.

The foregoing findings by the Bankruptcy Court adequately address the retention issue as framed by the First Circuit. The findings are not only supported by the record, but they also support the ultimate conclusion that Watman transferred the assets with intent to hinder, delay or defraud Groman.

3.    *The Lack or Inadequacy of Consideration*

The Bankruptcy Court was very direct on the question of adequacy of consideration; it simply found that there was none, stating:

> There is no evidence of any consideration paid by Watman or Lowell Dentistry. Although Watman testified that he generated accounts receivable for Children's Dental's benefit during the few days between March 24 and March 31, 1999, there is no evidence as to the amount of such receivables generated or collected.

App. p. 572. Indeed, a search of the record discloses no evidence whatsoever that any consideration was paid by Watman to Childrens Dental for the assets that were transferred to Lowell Dentistry.

4.    *Financial Condition Before and After the Transfer*

The Bankruptcy Court made it clear that the transfers orchestrated by Watman turned a profitable business into a business with little, if any value. It found:

> Prior to the transfers by possession, Children's Dental had generated profits which were paid to Watman as dividends. Although the "profits" were achieved at times by failing to make the monthly payment to Groman, there is nothing in the record to demonstrate that Children's Dental was financially unable to consistently make these payments. Certainly whatever negative cash flow Children's Dental would have had if it had made the Groman payments was made far worse when it was left with no income but the same obligation.

App. p. 572.  Childrens Dental went from a business that was generating a profit to a business with no meaningful assets:

> The only property remaining in Children's Dental's estate for liquidation by its Chapter 7 trustee consisted of accounts receivable, an obsolete computer that Lowell Dentistry originally used then stopped using at some point, furnishings, decorations, and a box of dental supplies of unknown value. Moreover the parties stipulated that, at the time of trial in this matter some two years after the bankruptcy was filed, Children's Dental's Chapter 7 Trustee had not liquidated any of the tangible assets. These assets had inconsequential value to the estate.

App. p. 570.

> 5.    *Existence or Cumulative Effect of Transactions or Series of Transactions After Groman Obtained His Judgment.*

One of the six areas that the First Circuit asked the Bankruptcy Court to address is "the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors." 301 F.3d at 26.  This area of inquiry contains two key components that Watman would like this Court to ignore.  First, the First Circuit asked the Bankruptcy Court to focus on the period of time "after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors."  Second, the First Circuit directed the Bankruptcy Court to consider "the existence or cumulative effect of the pattern or series of transactions" during this period.

Watman would have this Court focus only on the period of time after he resigned from Childrens Dental, arguing that Childrens Dental did not have any going concern value without him.[8]  This argument is both factually incorrect and not supported by any

---

[8] He would also have this Court ignore the fact that he made the transfers while still subject to a noncompete agreement.

evidence of record. More importantly, however, Watman asks this Court to take a focus that is narrower than directed by the First Circuit. In December 1998, Groman obtained his judgment against Watman in the amount of $437,918.00 and at the beginning of March 1999, Groman had filed a complaint seeking the appointment of a receiver for Childrens Dental. The hearing on the appointment of a receiver was scheduled for March 17, 1999. Except for the drafting of the formation documents for Lowell Dentistry – which occurred in January 1999, after the entry of judgment[9] – all events in question occurred after the originally scheduled date for the hearing on the appointment of a receiver and prior to the continued hearing date to consider that appointment. The series of transactions occurring after March 17, 1999 were for the most part the subject of a pretrial stipulation. They take up a substantial portion of the Bankruptcy Court's opinion, but the key ones are worth repeating here as described by the Bankruptcy Court:

> On March 18, 1999 Watman wrote 37 checks totaling $42,011.49 from Children's Dental's account; of these checks $14,702.00 were prepayments for April 1999 expenses, including $2,982.00 paid to Lowell Doctors Park, Children's Dental's landlord, for April rent.

App., p. 565.

> Watman also caused Children's Dental to pay its employees, including Watman, on March 18, 1999 even though those employees had been paid on March 10, 1999 and it was Children's Dental's practice to pay its employees biweekly.

App., p. 565.

> On March 19, 1999 Watman, by letter to attorney Michael Rosen, counsel for Children's Dental, terminated his employment with Children's Dental, effective immediately. By letter dated March 19, 1999 Watman, who had a covenant not to compete with Children's Dental, sent or caused to be

---

[9] It is clearly relevant that Watman began to form Lowell Dentistry shortly after the judgment was entered. Because most of the events occurred after the date of the originally scheduled receivership hearing, this brief focuses on that later time period.

sent a letter, prepared by Devine Millimet & Branch, informing patients scheduled for treatment with Children's Dental that he was leaving Children's Dental and that, after a short period on his own, would be forming Lowell Dentistry.

App., p. 565-66.

On or about March 25, 1999 Watman informed Lowell Doctors Park that Children's Dental was terminating its occupancy of the premises. He had told the landlord a day or two earlier that such termination was likely.

App., p. 566.

Watman operated a dental practice individually from March 24, 1999 to March 31, 1999. He ran his individual practice at the same location occupied by Children's Dental, and used the same furniture, equipment and supplies used by Children's Dental, and employed the same individuals, including an orthodontist and another pediatric dentist, who had been employed by Children's Dental.

App., p. 566.

Lowell Dentistry was incorporated on March 31, 1999 and began operations on that same day at the same location occupied by Children's Dental, using the same furniture, equipment and supplies used by, and with the same employees employed first by Children's Dental, and then Watman individually. Lowell Dentistry retained Children's Dental's patient records and serviced the same patients as had been patients of Children's Dental; most of Children's Dental's approximately 3,000 patients became patients of Lowell Dentistry.

App., p. 566.

The cumulative effect of Watman's actions, especially during the latter part of March 1999, resulted in the diminution and potentially the complete elimination of Children's Dental's going concern value.

App., p. 572.

It goes without saying that the Bankruptcy Court complied with the First Circuit's mandate on this issue. As pointed out, each of these findings are contained in the pretrial stipulation or is otherwise the subject of undisputed evidence.

6.    *The Shifting of Assets to a Corporation Wholly Controlled by the Debtor*

The record is clear and beyond dispute that Watman shifted assets from one corporation that he controlled (Childrens Dental) to another that he controlled (Lowell Dentistry). On this point, the Bankruptcy Court made the following observations:

> Watman is the president, sole shareholder and director of Lowell Dentistry.

App., p. 566.

> Watman was quickly and systematically taking the steps necessary to ensure that Lowell Dentistry could use Children's Dental's assets unencumbered by the Groman debt.

App., p. 568.

> Watman . . . took the value of Children's Dental, first for himself and then he transferred it to Lowell Dentistry, when he continued to operate virtually the same business, at the same location, using the same employees, equipment and supplies, and importantly the same patient records to treat Children's Dental's patients.

App., p. 571.


**D.    Watman's Arguments Are Misleading and Without Merit.**

Watman's arguments distort the First Circuit's decision and distort the evidence in an effort to convince this Court that somehow, when he embarked on his multi-step scheme to dismantle Childrens Dental and move the entire practice over to his newly formed corporation (1) he obtained no value from it, (2) it was done innocently and, in fact, in order to benefit Groman, and (3) in any event, he should be able to use his attorneys as a shield for this wrongful conduct.

The First Circuit opinion has been discussed in great detail earlier in this brief. Without recapitulating the entire opinion, the following points are essential:

First, the First Circuit opinion, while critical of the Bankruptcy Court's analysis of both the transfer and the intent issues, ultimately remanded the matter solely for a reevaluation of the intent issue, the Court stating that "[t]he bankruptcy court's analysis of the *indicia of fraud* was incomplete." 301 F.3d at 12 (emphasis added). Whether there was property transferred is itself a settled issue – something that Watman is desperately trying to get this Court to ignore.

Second, there is nothing in the First Circuit opinion that mandates that the Bankruptcy Court set a dollar value on the going concern of Childrens Dental, nor does it ask the Bankruptcy Court to determine that value *after* Watman took the actions that made any judgment against Childrens Dental worthless, as Watman would have this Court believe. Indeed, as explained above, the First Circuit instructed the Bankruptcy Court to examine "the existence or cumulative effect of *the pattern or series of transactions or course of conduct* after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors." *Id.* at 13 (emphasis added).

Third, Watman ignores the context of the First Circuit opinion, which was the reversal of the Bankruptcy Court's finding that he did not have the intent to hinder, delay or defraud Groman. Not only was the First Circuit directing the Bankruptcy Court to reexamine its conclusions on the intent issue using the analysis that the First Circuit mandated that the Bankruptcy Court use, but the First Circuit all but concluded that the transfers were done with intent to hinder delay or defraud. The Court made this point at least twice in its opinion, first stating:

> *There is considerable force to Groman's claim that there is no logical explanation for Watman's conduct here except an intent to delay, hinder, or defraud his creditors, particularly Groman.* We find no evidence of any consideration that passed between Childrens Dental and

Lowell Dentistry. Watman was present on all sides of the transaction. The timing of events, in light of the pendency of the receivership proceedings, is suspect.

*Id.* at 10 (emphasis added).  The First Circuit later went on to say in its opinion:

> To be sure, Watman was free to resign from Childrens Dental.  But it does not necessarily follow that he was free to take the practice with him. He stayed in the same office, retained all ten employees, continued to use the same equipment, and arguably succeeded in retaining the majority of Childrens Dental's approximately 3000 patients.  *At a minimum, these facts suggest the possibility that Watman transferred by possession the goodwill and going concern value from Childrens Dental to Lowell Dentistry without paying any consideration.*

*Id.* at 12 (emphasis added).

Fourth, in his stretch to convince this Court that the carefully calculated series of events that transformed the Childrens Dental practice – with its employees, patients, patient records, furniture, fixtures and equipment, and advantageous location – to Lowell Dentistry was not done with the intent to hinder delay or defraud Groman, Watman cites *In re Cooley*, 87 B.R. 432 (Bankr. S.D. Tex. 1988) for the proposition that Childrens Dental did not have any goodwill separate and apart from Watman.  What he fails to point out is that *Cooley* was critical of the Ninth Circuit's decision in *In re FitzSimmons*, 725 F. 2d 1208 (9th Cir. 1984), which was not willing to assume, as the *Cooley* court had, that all of the goodwill of the business was tied up in the business' rainmaker.  Yet, the First Circuit cited *FitzSimmons* with approval, quoting:

> "To the extent that the law practice's earnings are attributable not to [sole practicioner-debtor's [*sic*]] personal services but to the business' invested capital, accounts receivable, good will, employment contracts with the firm's staff, client relationships, fee agreements, or the like, the [post-petition] earnings of the law practice accrue to the estate."

301 F.3d at 12, *quoting*, *FitzSimmons*, 725 F.2d at 1211.  Indeed, the First Circuit's

citation of *FitzSimmons* comes immediately after its quote from its own decision in

*Robinson v. Watts Detective Agency*, 685 F.2d 729 (1st Cir. 1982):

> "The [bankruptcy] court engaged in a lengthy in-depth analysis of the
> transfers of the guards, customers and goodwill and held that they were
> each susceptible of having value and, therefore, of being 'property' in a
> bankruptcy setting.  We agree.  We add, however, that what was
> transferred amounted in the aggregate to a transfer of the business itself.
> The whole was greater than its parts."

301 F.3d at 12, *quoting*, *Robinson*, 685 F.2d at 734.  Watman would have this Court look

at the parts, when the First Circuit has made it clear that this Court must look at the

entirety of what was transferred.[10]  As in *Robinson*, the Bankruptcy Court in the present

case found that Watman had transferred all of the employees to Lowell Dentistry at the

same salaries, he retained the patient records[11] that belonged to Childrens Dental and

Childrens Dental's approximately 3,000 patients, he maintained his practice at the same

location and used the same furniture, fixtures and equipment.  As the Bankruptcy Court

found, all of this allowed Watman to continue the dental practice seamlessly under the

Lowell Dentistry name, an issue that was the driving force in the *Robinson* case.

Fifth, Watman's argument that his actions should be excused because he relied on

counsel and because he disclosed his actions to the trustee was effectively dispelled by

the First Circuit in this case, when it stated:

---

[10] In fact, from a purely logical perspective, Watman's position makes no sense.  At any given moment in time, the precise value of an asset or series of assets may be impossible to determine without reference to other assets transferred before or afterwards.  In any event, with respect to intent, the issue is only that such assets had value and were part of some overall scheme.

[11] Under Massachusetts law, patient records belonged to Childrens Dental, not to the patients, as Watman has argued.  All the patients are entitled to under Massachusetts law is to obtain a copy of the records at their expense.  M.G.L. ch. 112, § 12CC.

> The bankruptcy court's analysis of the indicia of fraud was incomplete, limited as it largely was to the absence of secrecy and Watman's reliance on the advice of counsel.

301 F.3d at 12-13.

Sixth, Watman's argument that he "resigned from Childrens Dental and formed Lowell Dentistry in order to preserve the value of Childrens Dental" (Brief of Appellant, p. 19) was also rejected by the First Circuit. In support of his argument, Watman cites to testimony of Michael Rosen, who was counsel for Childrens Dental. He also cites to the same testimony in his criticism of the Bankruptcy Court for discounting this testimony after remand. Yet, the First Circuit stated with regard to this testimony:

> Watman claims that he formed Lowell Dentistry to preserve the assets of Childrens Dental, relying for that claim on testimony by counsel for Childrens Dental that Lowell Dentistry would turn over profits to Childrens Dental for payment of the debt to Groman. However, that arrangement was never memorialized in writing, is not in any way referenced in any written memoranda, and was not reported in Childrens Dental's bankruptcy schedules. The bankruptcy court does not mention any such arrangement in its decision. We discount this argument . . . .

301 F.3d at 8-9. It is hard to understand how the Bankruptcy Court could have treated this issue any differently.[12]

Finally, Watman makes the curious argument that the Bankruptcy Court was not permitted to reverse its findings regarding intent because the First Circuit did not authorize it to do that. As an example of what the Bankruptcy Court did wrong, he points to the Court's express rejection of the testimony of Michael Rosen in it remand opinion,

---

[12] Watman is critical of the Bankruptcy Court for allegedly reversing its position on the credibility of the testimony of Michael Rosen regarding the alleged arrangement for Lowell Dentistry to operate for the benefit of Childrens Dental, yet he does not point to any previous finding from the Bankruptcy Court showing that it reversed its position on this point. (Brief of Appellant, pp. 21-22). Indeed, the First Circuit noted that the Bankruptcy Court did not "mention any such arrangement in its decision." 301 F.3d at 9. Not only is Watman's argument without factual basis, but the only authority that he cites in support of his position – the dissent in the capital murder case of *Moore v. Zant*, 885 F.2d 1497 (11th Cir. 1989) – is of no relevance to this case. In that case, even the dissent noted that the fact at issue had neither been re-briefed or re-argued, patently not the case before this Court.

which is the very testimony that the First Circuit itself was unwilling to believe. In connection therewith, Watman makes the absurd argument that, while the First Circuit remanded for the Bankruptcy Court to conduct a more thorough analysis, the Bankruptcy Court, after having undertaken that analysis, would not be free to change its conclusions. The First Circuit did not need to expressly authorize the Bankruptcy Court to reevaluate its ultimate conclusion; such authority was inherent in the remand itself. Indeed, in ruling that Watman acted with intent to hinder, delay or defraud Groman, the Bankruptcy Court, in effect, was following the First Circuit's lead, when it stated:

> There is considerable force to Groman's claim that there is no logical explanation for Watman's conduct here except an intent to delay, hinder, or defraud his creditors, particularly Groman.

301 F.3d at 10.

## V.    CONCLUSION

For the foregoing reasons, the judgment of the Bankruptcy Court denying Watman his discharge should be affirmed.

LAWRENCE GROMAN

By his attorneys,

Joseph S.U. Bodoff (BBO #549116)
Evan Slavitt (BBO #466510)
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114-1812
(617) 742-7300

Dated: September 29, 2004