UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
IN RE AARON H. WATMAN               )
                                    )
          Debtor.                   )
                                    )
_____)
                                    )
AARON H. WATMAN                     )
                                    )
          Defendant/Debtor,         )
          Appellant,                )
                                    )
     v.                             )    CIVIL ACTION NO. 04-40162-PBS
                                    )
LAWRENCE GROMAN                     )
                                    )
          Plaintiff/Creditor,       )
          Appellee.                 )
_____)
```

**MEMORANDUM AND ORDER**

September 27, 2005

Saris, U.S.D.J.

**I. INTRODUCTION**

This is an appeal from an order of the bankruptcy court
(Rosenthal, J.) entering judgment after trial and three remands
in an adversary proceeding.  The bankruptcy court denied Debtor-
Appellant Aaron Watman's discharge of indebtedness because it
found that Watman transferred property of an insider with an
intent to defraud pursuant to 11 U.S.C. § 727(a)(7) (2000),
incorporating § 727(a)(2)(A).  Watman asserts that the bankruptcy
court erred in both its factual findings and its manner of

1

inquiry on remand.

After a hearing and review of the record, the Court **AFFIRMS** the order of the bankruptcy court.

## II. BACKGROUND

The Court of Appeals for the First Circuit summarized the background facts of this case in In re Watman, 301 F.3d 3, 5-7 (1st Cir. 2002).  That factual summary is incorporated here; the procedural history follows.

On March 22, 1999, Watman filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code.  Id. at 6.  On August 27, 1999, Groman commenced this adversary action in bankruptcy court to deny Watman a Chapter 7 discharge:

> alleging, inter alia, that Watman's actions warranted a
> denial of his discharge pursuant to 11 U.S.C.
> §§ 727(a)(2) and (a)(7).  Watman subsequently moved to
> dismiss Groman's complaint for failure to state a claim
> under Rule 7012 of the Federal Rules of Bankruptcy
> Procedure and Rule 12(b)(6) of the Federal Rules of
> Civil Procedure.  That motion was granted by the
> bankruptcy court.  On appeal, the BAP reversed the
> bankruptcy court's dismissal of the § 727 objections to
> discharge and remanded for a trial on the merits.
> After trial, the bankruptcy court entered judgment in
> favor of Watman.  On appeal, the BAP affirmed the
> judgment of the bankruptcy court.

Id. at 6-7.

On appeal, the First Circuit determined that the bankruptcy court's factual findings were too indistinct and vacated the judgment, remanding the "case to the bankruptcy court for adequate findings on [several] issues."  The First Circuit left

2

the bankruptcy court "free to take more evidence if deemed necessary to carry out this mandate." Id. at 13.

On remand, the parties agreed that no further evidence was necessary, and the bankruptcy court invited the parties to submit additional memoranda to supplement the findings. (R. at 497-500.) Subsequently, the bankruptcy court entered judgment in favor of Groman on Count II pursuant to § 727(a)(7), incorporating § 727(a)(2), but in favor of Watman on Count I pursuant to § 727(a)(2). (See R. at 14, 505.)

On appeal, the BAP found that the bankruptcy court had "addressed some, but not all of the points mentioned by the Court of Appeals" and remanded for "more explicit findings in order to fulfill both the words and spirit of the mandate." (R. at 516, 519-20.)

On remand, both parties submitted additional memoranda. The bankruptcy court supplemented its previous findings and conclusions and again entered judgment in favor of Groman on Count II but in favor of Watman on Count I. (R. at 561-63.)

Watman filed a timely appeal, and Groman elected to have the appeal heard by this Court pursuant to 11 U.S.C. § 158(c) (2000). (See R. at 561, 574-75; Appellant Br. at 1.)

### III. STANDARD OF REVIEW

A "district court reviews a bankruptcy court's judgment in the same manner in which [a Court of Appeals] review[s] lower

court proceedings." <u>In re DN Associates</u>, 3 F.3d 512, 515 (1st Cir. 1993). Questions of law are reviewed de novo. <u>In re Winthrop Old Farm Nurseries, Inc.</u>, 50 F.3d 72, 73 (1st Cir. 1995). "'Findings of fact . . . shall not be set aside unless clearly erroneous . . . .' Applications of law are reviewed de novo and are set aside only when they are made in error or constitute an 'abuse of discretion.'" <u>In re DN Associates</u>, 3 F.3d at 515 (citations omitted). A finding of fact is clearly erroneous when, after reviewing the evidence, the court "'is left with the definite and firm conviction that a mistake has been committed.'" <u>In re G.S.F. Corp.</u>, 938 F.2d 1467, 1474 (1st Cir. 1991) (quoting <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 573 (1985)). In reviewing a bankruptcy court's findings of fact, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." <u>See</u> Fed. R. Bankr. P. 8103; <u>In re G.S.F. Corp.</u>, 938 F.2d 1467, 1474 (1st Cir. 1991). "Of course, if a reviewing court determines that a bankruptcy court's findings are too indistinct, it may decline to proceed further and remand for more explicit findings." <u>In re Healthco Int'l, Inc.</u>, 132 F.3d 104, 108 n.5 (1st Cir. 1997).

## IV. DISCUSSION

11 U.S.C. § 727(a)(2000) provides that a bankruptcy court "shall grant the debtor a discharge, unless" an enumerated

4

exception is met.  In this case, the bankruptcy court denied Watman's discharge in bankruptcy based on a finding that Watman's "actions fall within the exceptions to discharge set forth in Section 727(a)(7), incorporating section 727(a)(2)(A)."  (R. at 572.)

To succeed on a claim for the denial of discharge under § 727(a)(2)(A),[1] the party requesting the denial must

> show by a preponderance of the evidence that (1) the debtor transferred, removed, destroyed, mutilated, or concealed (2) his or her property (or the property of the estate if the transfer occurs post-petition) (3) within one year of the petition filing date (for prepetition transfers) (4) with intent to hinder, delay or defraud a creditor.

In re Watman, 301 F.3d at 7 (1st Cir. 2002) (citing In re Hayes, 229 B.R. 253, 259 (B.A.P. 1st Cir. 1999)) (emphasis added). Because of the seriousness of a denial of discharge, the reasons for denying a discharge "must be real and substantial, not merely technical and conjectural."  In re Tully, 818 F.2d 106, 110 (1st Cir. 1987) (citation omitted).  As such, "[g]rounds for discharge are construed liberally in favor of the debtor."  In re Watman, 301 F.3d at 7 (citing In re Burgess, 955 F.2d 134, 137 (1st Cir.

---

[1]Section 727(a)(2)(A) provides that:  "The court shall grant the debtor a discharge unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition[.]"

1992)).  However, the "fresh start" objective of the Bankruptcy

Code must be balanced with the purpose of certain sections of the

law such as § 727(a), which

> make certain that those who seek the shelter of the
> bankruptcy code do not play fast and loose with their
> assets or with the reality of their affairs.  The
> statutes are designed to insure that complete,
> truthful, and reliable information is put forward at
> the outset of the proceedings, so that decisions can be
> made by the parties in interest based on fact rather
> than fiction.

In re Tully, 818 F.2d at 110.

By incorporating § 727(a)(2)(A), § 727(a)(7) enables the

party requesting the denial of discharge to prevail based on the

acts of the debtor regarding the property of not only the debtor

but also the debtor's "insiders."[2]  Where the debtor is an

individual, as Watman is here, the term "insider" is defined to

include a "corporation of which the debtor is a director,

officer, or person in control."  11 U.S.C. § 101(31)(A)(iv)

(2000).

Groman, as the party requesting the denial of discharge,

bears the burden of proving his § 727 objection.  Fed. R. Bankr.

P. 4005.  Watman claims that the bankruptcy court erred in its

---

[2]Section 727(a)(7) provides that: "The court shall grant the
debtor a discharge, unless . . . the debtor has committed any act
specified in paragraph (2), (3), (4), (5), or (6) of this
subsection, on or within one year before the date of the filing
of the petition, or during the case, in connection with another
case, under this title or under the Bankruptcy Act, concerning an
insider[.]"

findings of fact and erred at law.

**A. <u>Claimed Errors in Findings of Fact</u>**

At issue in this appeal is whether the actions of Watman's insider allow the bankruptcy court to deny Watman a discharge under § 727(a)(7), incorporating § 727(a)(2)(A). "Under this theory, Groman alleges that Childrens Dental is an insider of Watman . . . .  In light of Watman's status as sole officer, shareholder, and director of Childrens Dental, Childrens Dental clearly qualifies as an 'insider' of Watman for purposes of § 727(a)(7), and Watman does not argue otherwise."  <u>In re Watman</u>, 301 F.3d at 7.

Watman does argue, however, that the bankruptcy court's findings of fact regarding Childrens Dental's property, Watman's intent, and harm to Groman were "clearly erroneous."

1. <u>Property of Childrens Dental</u>

The second element of § 727(a)(7), incorporating § 727(a)(2)(A), requires that the bankruptcy court determine whether Childrens Dental's assets were "properly considered property of Childrens Dental such that they would have been included in the estate for the benefit of creditors."  <u>See</u> <u>In re Watman</u>, 301 F.3d at 7, 11-12.  This property analysis is essential to determine "exactly what property was transferred" from Childrens Dental by Watman.  <u>See</u> <u>id.</u> at 10.  Here, the bankruptcy court began by providing the correct definition of

"transfer" in its analysis.  (<u>Compare</u> R. at 501-02 <u>with</u> R. at
444-45.)  Next, based on this definition, the bankruptcy court
identified what property "was and was not transferred between
Childrens Dental and Lowell Dentistry," Watman's new corporation.
<u>In re Watman</u>, 301 F.3d at 11.  Judge Rosenthal found that Watman
transferred Childrens Dental's "space, patient records,
employees, and good will" and "also used Childrens Dental's funds
to prepay expenses that he knew he or a new corporation would
incur."  (R. at 502, 565.)  The only property not transferred and
"remaining in Children's Dental's estate for liquidation by its
Chapter 7 Trustee consisted of accounts receivable, an obsolete
computer that Lowell Dentistry originally used then stopped using
at some point, furnishings, decorations, and a box of dental
supplies of unknown value."  (<u>Id.</u> at 569-570.)  As such, the
bankruptcy court did not fail, as alleged by Watman, "to
determine if certain assets of Childrens Dental constituted
property of the Childrens Dental estate."  (Appellant Br. at 12.)

Watman argues that these findings are deficient for two
reasons.  First, he contends that the bankruptcy court "failed to
issue findings as to the value of each specific asset."  (<u>Id.</u>)
This argument, however, finds no support in the law.  Neither
§ 727 nor the First Circuit's remand requires that the bankruptcy
court perform such calculations.  <u>See</u> § 727; <u>In re Watman</u>, 301
F.3d at 3.  Indeed, several bankruptcy courts have stated the

8

opposite: "once a transfer by the debtor is established as fraudulent under § 727(a)(2)(A), it is not necessary to establish the value of the transfer." In re Rothrock, 96 B.R. 666, 676 (Bankr. N.D. Tex. 1989) (emphasis added); In re Riddle, 8 B.R. 797, 799 (Bankr. S.D. Fla. 1980); In re Locke, 50 B.R. 443, 452 (Bankr. E.D. Ark. 1985) (citing In re Riddle, 8 B.R. at 799). The Bankruptcy Act requires only that assets constitute "anything of value - anything which has debt paying or debt securing power" to be considered "property." See In re Watman, 301 F.3d at 11 n.8 (quoting Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 734 (1st Cir. 1982)) (emphasis added).

Here, the bankruptcy court found that the property transferred from Childrens Dental had "value." Generally, "Childrens Dentistry's space, patient records, employees, and good will" constituted "all of the value of Childrens Dentistry." (R. at 502.) Specifically, Groman proffered "evidence of the value of transferred funds," and the bankruptcy court found that "[t]here must be some value" in the good will of Childrens Dental independent of Watman "given that Watman was not the only dentist employed by or affiliated with Childrens Dental." (R. at 503.) Because nothing requires the bankruptcy court to perform exact valuations, the bankruptcy court's findings that such assets constituted "property" of Childrens Dental were not clearly erroneous.

In addition, Watman should be mindful that his actions, transferring property from Childrens Dental, made calculating exact values more difficult by depriving the trustee of "the opportunity to conduct a sale of Children's Dental as a going concern." (R. at 10.) The First Circuit has found such conduct to prevent defendants from demanding exact valuations in the damages context: "[A] defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." Allens Mfg. Co., Inc. v. NAPCO, Inc., 3 F.3d 502, 505 (1st Cir. 1993).

Second, Watman argues that the bankruptcy court's finding that Childrens Dental had any going concern or good will value independent of Watman was clearly erroneous. (See Appellant Br. at 14.) As a threshold matter, state law defines "good will" and "going concern value" in bankruptcy determinations. See Barnhill v. Johnson, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."). Massachusetts law defines these two distinct but related concepts as follows:

> Good will is "all that goes with a business in excess of its mere capital and physical labor, such as reputation for promptness, fidelity, integrity, politeness, business sagacity and commercial skill in the conduct of its affairs, solicitude for the welfare of customers and other intangible elements which

10

> contribute to successful commercial adventure." <u>Martin</u>
> <u>v. Jablonski</u>, 253 Mass. 451, 149 N.E. 156, 159 (Mass.
> 1925).  Where "the resources of an ongoing enterprise
> are used in conjunction with each other they may well
> have a collective value, as so used, in excess of the
> sum of the values of the individual resources taken
> separately." <u>Glosband</u>, 21 B.R. at 975.  That
> collective value is referred to as "going concern
> value." <u>Id.</u>

<u>In re Watman</u>, 301 F.3d at 11 n.9.  Regarding good will,

Massachusetts law also recognizes that in the context of

professional partnerships, including those of dentists, "the

existence and value of good will upon dissolution of a

partnership is a question of fact" and that "'[i]n the absence of

an agreement to the contrary the good will of a partnership is an

asset of the firm, and a partner appropriating it to his own use

must account for its value.'" <u>Stefanski v. Gonnella</u>, 15 Mass.

App. Ct. 500, 502, 446 N.E.2d 734, 736 (Mass. App. Ct. 1983).

Based on these principles, Massachusetts courts have "rejected

cases which held that there is no value to the good will of a

professional partnership . . . even though upon dissolution the

partners could compete with one another." <u>Id.</u>

Watman cites <u>In re Cooley</u>, 87 B.R. 432, 443 (Bankr. S.D.

Tex. 1988), to support his argument that Childrens Dental has no

independent good will or going concern value.  (Appellant Br. at

13.)  In <u>Cooley</u>, however, the Bankruptcy Court of the Southern

District of Texas acknowledged that "personal good will can be

and is generally distinguishable from business good will." <u>Id.</u>

11

at 442.  <u>Cooley</u> thus rested not on a point of law but rather, on
its particular facts:

> The debtor, Dr. Denton A. Cooley, is without dispute
> one of the most famous heart surgeons in the world.
> His reputation in the medical field is unsurpassed
> nationally and internationally . . . .  Dr. Cooley is
> indisputably a "rainmaker" in his profession.  It is
> his reputation and his personal referral network on a
> local, national, and international level among
> cardiologists and other physicians which cultivates a
> continuous patient pool . . . .  In sum, Dr. Cooley's
> contributions towards the earnings generated by his
> medical practice in 1987 far outweighed the collective
> contributions of the five associate surgeons.

<u>Id.</u> at 434-35.  By contrast, in this case, Childrens Dental
existed before Watman joined the practice.  (R. at 563.)  Watman,
both as a solo practitioner and as part of Lowell Dentistry,
decided to operate at the same location, use the same furniture,
equipment and supplies, employ the same employees (including an
orthodontist and another dentist), retain the same patient
records, and service the same patients as Childrens Dental.  (R.
at 566.)  Before Watman filed for bankruptcy, he was willing to
make monthly payments for these combined Childrens Dental assets.
(<u>See</u> R. at 563.)  Under these circumstances, it was not clearly
erroneous for the bankruptcy court to find that there was some
good will and going concern value in Childrens Dental independent
of Watman.  (R. at 503, 569.)

In addition, the bankruptcy court found that the
noncompetition agreement between Watman and Childrens Dental
indicated that "Children's Dental had value to be protected."

(R. at 569.)  Watman discounts this argument by citing <u>In re</u>
<u>Ward</u>, 194 B.R. 703 (Bankr. D. Mass. 1996) for the proposition
that the effect of Watman's bankruptcy petition "was to cause the
noncompetition agreement to be rejected and to reduce the claim
of Childrens Dental to a simple unsecured monetary claim."
(Appellant Br. at 16.)  The law regarding noncompetition
agreements, however, is in "disarray," and whether such
agreements are dischargeable claims in bankruptcy may depend on
the specific language of the agreement.  <u>See</u> <u>In re Ground Round,</u>
<u>Inc.</u>, 326 B.R. 23, 30 (Bankr. D. Mass. 2005); <u>Sir Speedy, Inc. v.</u>
<u>Morse</u>, 256 B.R. 657, 658 (D. Mass. 2000).

Regardless, this Court need not decide this dischargeability
issue for two reasons.  First, the circumstances other than the
noncompetition agreement, discussed above, are sufficient to
justify the bankruptcy court's finding that Childrens Dental had
value independent of Watman.  Second, Watman's argument regarding
dischargeability is inapposite.  The relevant debate is whether
the existence of the noncompetition agreement supported an
inference of good will of the business apart from the personal
good will of Dr. Watman.  Here, the noncompetition agreement was
in effect at the time of the transfer.  While a noncompetition
agreement, without more, may not be enough to infer independent
good will or going concern value, it lends additional support to
such an inference when other circumstances, such as those

13

discussed above in this case, are present.  Cf. Matrix Group
Ltd., Inc. v. Rawlings Sporting Goods Co., Inc., 378 F.3d 29, 34-
35 (1st Cir. 2004) (finding such an inference too speculative to
support the irreparable injury required for a preliminary
injunction when based on a noncompetition agreement alone).

Therefore, based on the bankruptcy court's findings, this
Court affirms the bankruptcy court regarding Childrens Dental's
property.

2. Intent to Hinder, Delay, or Defraud

To deny Watman a discharge under § 727(a)(7) via
§ 727(a)(2)(A), the bankruptcy court must also find that Watman
acted with an intent "to hinder, delay, or defraud his creditors
(including Groman) from collecting on their debts."  In re
Watman, 301 F.3d at 8.  To establish intent, the party seeking
the denial of discharge must prove actual, as opposed to
constructive, intent to defraud.  Id. (citation omitted).  "Given
the practical difficulty of mounting direct evidence of the
debtor's intent, few cases turn on such proof," and courts
instead, may infer actual intent from the facts and circumstances
surrounding the transfer.  Id.; In re Varrasso, 37 F.3d 760, 764
(1st Cir. 1994) (stating that "circumstantial evidence may be
sufficiently potent to establish fraudulent intent beyond hope of
contradiction"); see also In re Sterman, 244 B.R. 499, 504 (D.
Mass. 1999).

14

Looking to the circumstances surrounding the transfer,
courts have identified several objective indicia that,
taken together, strongly indicate fraudulent intent.
Those indicia include: (1) insider relationships
between the parties; (2) the retention of possession,
benefit or use of the property in question; (3) the
lack or inadequacy of consideration for the transfer;
(4) the financial condition of the party sought to be
charged both before and after the transaction at issue;
(5) the existence or cumulative effect of the pattern
or series of transactions or course of conduct after
the incurring of debt, onset of financial difficulties,
or pendency or threat of suits by creditors; (6) the
general chronology of the events and transactions under
inquiry; and (7) an attempt by debtor to keep the
transfer a secret.

In re Watman, 301 F.3d at 8 (citations omitted).  Other factors

"include . . . a purported transfer of all or substantially all

of the debtor's property; [and] the instrument affecting the

transfer suspiciously stating that it is in fact bona fide."  In

re Lang, 246 B.R. 463, 469 n.9 (Bankr. D. Mass. 2000) (citations

omitted), aff'd, 256 B.R. 539 (B.A.P. 1st Cir. 2000).  As a

finding of fact evaluated under the "clearly erroneous" standard

on appeal, reviewing courts "typically defer to the bankruptcy

court's conclusions" when "the intent issue [turns] on the

credibility and demeanor of the debtor."  See In re Watman, 301

F.3d at 8 (citations omitted).

    As direct evidence of an absence of intent, Watman asserted

that the purpose of Lowell Dentistry was to preserve the value of

Childrens Dental and offered the testimony of Childrens Dental's

counsel.  (See R. at 567.)  Since Lowell Dentistry "took over

Children's Dental's practice" leaving "no practice . . . for

15

Children's Dental to operate" and "there was no writing evidencing any agreement between the two corporations, each of which was controlled by Watman," the bankruptcy court found the testimony "not credible." (See id. at 567-68, 571.) This finding is not clearly erroneous.

As such, the bankruptcy court turned to circumstantial evidence of intent and found that all but one of the "objective indicia" pointed to Watman's "intent to hinder, delay, or defraud" Groman. (R. at 571-73.) Judge Rosenthal detailed his findings regarding each factor as follows:

(1) Insider relationships between the parties. (See id. at 563, 566, 572.)
(2) Retention of possession, benefit or use of the property in question. (See id. at 570-71.)
(3) Lack or inadequacy of consideration for the transfer. (See id. at 504-05, 567.)
(4) Financial condition of the party sought to be charged both before and after the transaction at issue. (See id. at 568-70.)
(5) Existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors. (See id. at 570-71.)
(6) General chronology of the events and transactions under inquiry. (See id. at 505, 563-68.)
(7) Attempt by debtor to keep the transfer a secret. (See id. at 505, 572.)

Watman emphasizes the last factor on appeal because he did not attempt to keep any of the transfers secret. (See Appellant Br. at 18-21.) All other objective indicia, however, point to a finding of intent, and as the First Circuit previously observed, "There is considerable force to Groman's claim that there is no

16

logical explanation for Watman's conduct here except an intent to delay, hinder, or defraud his creditors, particularly Groman." In re Watman, 301 F.3d at 10. Moreover, the bankruptcy court found that "Watman transferred virtually all of Children's Dental's entire business" (R. at 567), which constitutes another factor pointing to fraudulent intent. See In re Lang, 246 B.R. at 469 n.9.

Therefore, based on the bankruptcy court's findings, this Court affirms the bankruptcy court's conclusion that Watman acted with actual "intent to hinder, delay, or defraud" his creditors (including Groman).

3. Harm to Creditors

Watman further claims that the bankruptcy court's finding that "Lowell Dentistry's use of certain assets harmed the creditors of Childrens Dental was clearly erroneous." (Appellant Br. at 17.) This argument essentially attacks the bankruptcy court's finding regarding the fifth objective indicia of the "intent to hinder, delay, or defraud" analysis. See In re Watman, 301 F.3d at 8.

Watman argues that his use of Childrens Dental's assets could not harm its creditors because the bankruptcy court found that "the tangible assets were of inconsequential value to the estate." (See Appellant Br. at 17.) This argument, however, fails for two reasons. First, Watman understates his use of

Childrens Dental's assets by including only "tangible" assets. "The same evidence which supported a finding that [Childrens Dental's] operation had [intangible going concern] value also sustains the finding that the bankrupt's estate suffered a loss to the extent of the transfer." <u>Robinson</u>, 685 F.2d at 735-36. Second, by emphasizing a portion of the bankruptcy court's finding out of context, Watman overstates the bankruptcy court's finding.  The bankruptcy court did not find that all of Childrens Dental's tangible assets were inconsequential in value; rather, Judge Rosenthal found that the tangible assets of Childrens Dental left for liquidation after Watman's transfers had inconsequential value.  (<u>See</u> R. at 569-70.)  As such, the bankruptcy court did not err in finding that the creditors of Childrens Dental were harmed by Watman's actions.

**B. <u>Claimed Errors at Law</u>**

    1. <u>Scope of Inquiry on Remand from the First Circuit</u>

Watman argues on appeal that the bankruptcy court "improperly expanded its inquiry to issues beyond the scope of the Court of Appeals' mandate" by reexamining its findings regarding "intent to hinder, delay, or defraud." (<u>See</u> Appellant Br. at 24-26.)  The "law of the case" limits the scope of inquiry on remand:

> In terms of the dynamics between trial and appellate courts, the phrase "law of the case" signifies, in broad outline, that a decision of an appellate tribunal on a particular issue, unless vacated or set aside,

governs the issue during all subsequent stages of the litigation in the nisi prius court, and thereafter on any further appeal.  As one commentary puts it:

> When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it must be followed by the trial court on remand.  If there is an appeal from the judgment entered after remand, the decision of the first appeal establishes the law of the case to be followed on the second.

It follows, then, that "when a case is decided by an appellate court and remanded . . . any questions that were before the appellate court and disposed of by its decree become the law of the case and bind the district court on remand."

<u>United States v. Rivera-Martinez</u>, 931 F.2d 148, 150 (1st Cir. 1991) (citations omitted).  Here, the First Circuit could not "tell whether the bankruptcy court applied the correct definition of transfer in its analysis," questioned the bankruptcy court's "ultimate [property] determinations about what was or was not transferred between Childrens Dental and Lowell Dentistry," found the "bankruptcy court's analysis of the indicia of fraud was incomplete," and "vacate[d] and remand[ed] for further proceedings consistent with [its] opinion."  <u>In re Watman</u>, 301 F.3d at 10-13.  Therefore, Watman's argument relies on a misinterpretation of the First Circuit's opinion.  The bankruptcy court's reexamination of its "intent to hinder, delay, or defraud" finding fell properly within the First Circuit's mandate and does not violate the "law of the case" doctrine.

   2. <u>Reversal of Factual Findings Without Additional Evidence</u>

19

Watman also argues that "[i]t is clearly erroneous for a court to reach a completely different result based on the same law and identical facts that were before it at trial." (Appellant Br. 21.)  While there is little case law on point, generally if a trial court on remand "perceives an error in its own former proceedings, such as inconsistent findings of fact and the like, not touched upon by the appellate court, there would appear to be no reason why it could not change its former findings to any extent not prohibited by the appellate court's mandate."  19 A.L.R.3d 502 (2000); see also Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp., 354 F.2d 459, 462 (2d Cir. 1965) ("Nevertheless, it was within the power of the trial court to find that it had been wrong the first time and reverse itself on the facts."); Roe & Co. v. Armour & Co., 414 F.2d 862, 865 (5th Cir. 1969) ("Although . . . the district court was not directed to reconsider its prior findings, it was nonetheless within the court's power on remand to find that it had been wrong the first time and reverse itself.").[3]

---

[3]Watman cites Moore v. Zant, 885 F.2d 1497 (11th Cir. 1989) for the proposition that "[b]y operation of no principle . . . can this Court reach a result contrary to that which it reached under identical law and facts two years ago."  Id. at 1523 (Johnson, J., dissenting).  In Moore, however, the Supreme Court remanded the case for reconsideration in light of Teague v. Lane, 489 U.S. 288 (1989).  Moore, 885 F.2d at 1497.  Moreover, even if the law and facts were identical, the Eleventh Circuit sitting en banc did exactly what Watman argues cannot be done -- it reversed its prior position on remand.  Id.

Here, Watman objects to the bankruptcy court reversing its findings on remand regarding "intent to hinder, delay, or defraud" without hearing any additional evidence.  The First Circuit, however, directed the bankruptcy court to correct its incomplete "analysis of the indicia of fraud" and specifically questioned its reliance on the testimony of Childrens Dental's counsel:

> Watman claims that he formed Lowell Dentistry to preserve the assets of Childrens Dental, relying for that claim on testimony by counsel for Childrens Dental that Lowell Dentistry would turn over profits to Childrens Dental for payment of the debt to Groman. However, that arrangement was never memorialized in writing, is not in any way referenced in any written memoranda, and was not reported in Childrens Dental's bankruptcy schedules.  The bankruptcy court does not mention any such arrangement in its decision.  We discount this argument and turn to the evidence cited by the bankruptcy court.

In re Watman, 301 F.3d at 8-9, 12 (emphasis added).  Given such language, it is within the bankruptcy court's power to reverse its factual findings regarding "intent to hinder, delay, or defraud" and not altogether surprising that after focusing on this argument, the bankruptcy court ultimately reevaluated its findings with respect to the credibility of Watman and Childrens Dental's counsel.

## **CONCLUSION**

The bankruptcy court's ruling is **AFFIRMED**.


_____
PATTI B. SARIS
United States District Judge